**John Fitzgerald COLLINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–89–1083–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 1, 1990.

Esmeralda Pena Garcia, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

OPINION

ELLIS, Justice.

Appellant, John Fitzgerald Collins, appeals his judgment of conviction for the offense of aggravated robbery, TEX.PENAL CODE ANN. § 29.03 (Vernon 1989). The jury rejected appellant's not guilty plea and assessed punishment at twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Appellant and Lavada Gilder had been living together for eight months proceeding the incident. The relationship had terminated and appellant had been in the process of moving out for three or four days. At noon on May 13, 1988, appellant and Gilder argued over money. Gilder's car had broken down and appellant wanted the money he paid for a part he had put in Gilder's car.

They continued arguing with appellant asking for his money, and Gilder refusing to give him any. Gilder testified appellant came into the kitchen with a "shotgun" and

shot her. She then gave appellant the money he wanted.

Trial testimony of Gilder is as follows:

Q: After you went to the kids' room what happened?

A: I went into the kitchen. I was taking my barbecue stuff out onto the counter and he came around the corner from my bedroom, you know, around the corner to the kitchen and he stood there by the pantry door and he told me, he said, you're not going to give me my money. I said no, but before I could get it out of my mouth he had a shotgun.

Q: Did you see the shotgun?

A: I did not see prior to him shooting me.

Q: Where were you shot?

A: Right here. (Indicating).

Q: When you say "right here," the record doesn't right that.

A: Near my right—like in the breast.

Q: Did you hear the gunshot?

A: Yes, I did.

Q: And what made you realize you had been shot?

A: I didn't want the noise, really the sound like a pop, you know, like a firecracker, I really—I think I was more shocked than anything because I didn't think he would do that.

Q: Did you have any warning that he was going to shoot you?

A: No, no.

   *    *    *    *    *    *

Q: After he shot you what did you say?

A: I said, "Oh, God, Jay, you shot me." And he said, "I know, give me the money."

Q: What did you do?

A: I went off in my bosom to get him the money and I handed him the money that I had taken out, but he told me, no, just give it all to me, give it all to me. And I went back up and got the rest of it although it was bloody.

Q: As far as the money that you keep in your bosom what did you keep it there for?

A: For safety because for safety so it wouldn't be taken.

Q: Did the Defendant know that's where you kept it?

A: No.

Q: How much money did you have with you on May 13th of 1988?

A: In my bosom I would say anywhere from $85 to $100.

Q: What was that money for?

A: For my rent and my other bills.

Q: Were you going to give him how much money?

A: He had told me I owed him $30 and since he was being like that and had shot me, of course, I would give him $30.

Q: Is that what he said, no, give me all the money?

A: No, just give it all to me, just give it all to me.

Q: Did you give it to him?

A: Yes, I sure did.

Q: What did you do then?

A: After he shot me and I gave him the money he proceeded to go to the front door. I was going towards the back room where my nephew was and he told me, I ought to shoot you again. I ought to just kill you, which made me get away, I guess. He took off the door; I was trying to get out of the way.

■ In his first point of error, appellant contends that the trial court erred in that the State's evidence was insufficient to support a conviction for aggravated robbery because all the elements of "theft," as defined in Chapter 31 of the Texas Penal Code, were not proven beyond a reasonable doubt. Appellant claims that the State failed to prove: (1) that appellant knowingly and intentionally stole money from his girlfriend, Ms. Gilder; and (2) who the actual or true owner of the money was.

The proper standard of review in the case before us is that of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that is, when confronted with a challenge to the sufficiency of the evidence, an appellate court must determine

whether, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Further, the appellate courts ensure only the rationality of the fact finder, serving as a final due process safeguard. *Moreno v. State*, 755 S.W.2d at 867. The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Esquivel v. State*, 506 S.W.2d 613, 616 (Tex.Crim.App.1974). It is not our place to second guess the determination made by the trier of fact.

With this standard in mind we turn to the instant case. Appellant acknowledges that he shot Gilder with a shotgun when she would not give him $30.00 which he claimed to have spent repairing her car. Appellant was, in effect, enforcing a worker's lien by demanding payment with a shotgun. This is not the legal method of exercising a lien. In the first place, it would seem that such a lien should be exercised against the car, not the debtor. In the second place, the use of force is prohibited to collect on a debt. Appellant's argument ignores the absence of reference in the Texas Penal Code to a defense or justification for appellant's actions in this case. The Texas Penal Code does not provide a defense or justification for appellant's actions in this case.

To hold that a creditor's assault upon a debtor for the purpose of collecting a debt does not constitute a robbery would be establishing a dangerous precedent, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence. This is contrary to the policy of our form of government. *Crawford v. State*, 509 S.W.2d 582 (Tex.Crim.App.1974); *Henderson v. State*, 149 Tex.Crim. 167, 192 S.W.2d 446 (Tex.Crim.App.1946).

We find, when reviewing the evidence in the light most favorable to the verdict, it is clear that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of aggravated robbery. Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the trial court erred by commenting upon the weight of the evidence in the jury charge and the same was fundamental error. A trial court should never give the jury an instruction which constitutes a comment on the elements of the alleged offense, or assumes a disputed fact. *Grady v. State*, 634 S.W.2d 316, 317 (Tex.Crim.App.1982); *Koffel v. State*, 710 S.W.2d 796, 802 (Tex.App.—Fort Worth 1986, pet. ref'd). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex.Crim.App.1986). The jury charge was not objected to at trial, but Appellant contends that fundamental error was committed and "the error is so egregious and created such harm that Appellant has not had a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984).

■ Appellant claims the charge did not permit the jury to determine whether the facts, events or acts constituted "theft." The final charging paragraph reads:

"Now, if you find from the evidence beyond a reasonable doubt that on or about the 13th day May, 1988, in Harris County, Texas the Defendant, John Fitzgerald Collins, did then and there unlawfully while in the course of committing theft of property owned by Lavada Armington Gilder, and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Lavada Armington Gilder in fear of imminent bodily injury or death, by using or exhibiting a deadly weapon, namely, firearm, then you will find the defendant guilty as charged in the indictment."

The Court's charge also contained the correct definitions of aggravated robbery. The terms, *in the course of committing theft, attempt to commit an offense, theft, appropriation and appropriate, property, deprive, effective consent, owner and*

*possession*, were defined to help the jury determine if appellant was guilty of aggravated robbery. The complained of portion of the charge also was prefaced and modified by the charge, "if you find from the evidence beyond a reasonable doubt." We hold that the language used in the charge did not constitute either a comment on the elements of the offense or an assumption of the truth of controverted facts and was not a comment on the weight of the evidence. Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.